IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MICHELLE DUNCAN                                        PLAINTIFF

V.                              NO. 10-5089

MICHAEL ASTRUE,
Commissioner of the Social Security Administration          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Michelle Duncan, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claim for a period of disability and disability insurance benefits

(DIB) under the provisions of Title II of the Social Security Act (Act).  In this judicial review,

the Court must determine whether there is substantial evidence in the administrative record to

support the Commissioner's decision.  See 42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff filed her current application on August 22, 2006, alleging an inability to work

since May 2, 2002, due to low back pain (degenerative disk disease at L4-5);  pain in her left hip,

right wrist, left foot, and left leg;   facet hypertrophy - lower lumbar;  depression;  headaches;

poor memory;  sleeplessness and fatigue;  inability to tolerate wet and cold conditions;  and poor

reading and writing.  (Tr. 77-79, 92).  An administrative hearing was held on February 5, 2008,

at which Plaintiff appeared with counsel, and she and her husband testified.  (Tr. 9-3).

By written decision dated August 5, 2008, the ALJ found that Plaintiff met the insured

status requirements of the Act through December 31, 2007, and had an impairment or

-1-

combination of impairments that were severe - lumbar degenerative disc disease and mood

disorder.  (Tr. 44).   However, after reviewing all of the evidence presented, he determined that

Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the

Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 44).  The ALJ

found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except she can push and pull 20
> pounds occasionally and 10 pounds frequently; sit for 5 hours and stand and/or walk for
> 6 hours.  She can occasionally climb ladders and scaffolds and can occasionally crawl.
> She can frequently climb stairs and ramps, balance, kneel, crouch and stoop.  She is
> moderately limited in the ability to understand, remember and carry out complex
> instructions, interact appropriately with supervisors, and respond appropriately to usual
> work situations and routine work changes.  Moderately limited means there is more than
> a slight limitation but the person can still perform in a satisfactory manner.

(Tr. 46).  With the help of a vocational expert (VE), the ALJ determined Plaintiff could perform

other work, such as production work, sewing machine operator, and cashier.  (Tr. 48-49).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

denied that request on April 27, 2010.  (Tr. 1-3).  Subsequently, Plaintiff filed this action.  (Doc.

1).  The case is before the undersigned pursuant to the consent of the parties.  (Doc. 5).  Both

parties have filed appeal briefs, and the case is now ready for decision.  (Docs. 8, 9).

**II:    Evidence Presented:**

The records reflect that Plaintiff began complaining of lower back pain, which went down

to her left hip and leg, in late 2005.  (Tr. 206.  A MRI of Plaintiff's lumbar spine performed on

December 8, 2005, revealed:

> 1.  Mild degenerative disc disease at L4-5.  Central disc protrusion at this level mildly
> flattens the anterior aspect of thecal sac.  The neural foramina are mildly narrowed.
> 2.  No destructive bony process.  No moderate or high-grade canal stenosis.  No disc
> fragment or large extrusion identified.

3.  Mild facet hypertrophy within the lower lumbar levels.

(Tr. 202).  A MRI of Plaintiff's left hip with pelvis revealed the following:

> No definite MRI evidence for source of patient's symptoms.  No large joint effusion or evidence of fracture.  No MRI evidence of avascular necrosis.

(Tr. 203).

In March and April of 2006, Plaintiff presented herself to Dickson Street Clinic, complaining of low back pain.  (Tr. 205, 207).  It was noted that Plaintiff was "unable to do PT ($)."  (Tr. 205).

On September 19, 2006, Richard D. Back, Ph.D., of the Northwest Arkansas Psychological Group, evaluated Plaintiff and completed a Mental Status and Evaluation of Adaptive Functioning report.  (Tr. 152-156).  Dr. Back noted that Plaintiff drove to the appointment unaccompanied, and her gait was normal, but her posture was slumped.  (Tr. 152). No indications of pain were noted.  (Tr. 152).  At that time, Plaintiff was taking Skioaxin, Hydrocodone, and Ibuprofen.  (Tr. 152.  She denied any inpatient or outpatient psychiatric treatment.  Plaintiff advised Dr. Back that her last formal employment was five years previously as a technician, repairing Wal-Mart scanners, and that she quit because she "got tired of being part-time, and my back was bothering me, too."  (Tr. 153).  Plaintiff told Dr. Back that she "has smoked a pack of cigarettes a day for 10 to 11 years."  (Tr. 153).  Plaintiff advised Dr. Back that she had suicidal thoughts as recently as a couple of weeks before the visit, and that she would spend eight hours in bed after her two children were gone to school.  (Tr. 154).  Dr. Back estimated Plaintiff's IQ to be 71-79.  (Tr. 154).

In Dr. Back's findings, he noted that Plaintiff's withdrawal and passivity were "marked." (Tr. 155). He also noted that Plaintiff's concentration was "markedly impaired on Digit Span and Serial 3s," and that her persistence was "markedly impaired on five cities." (Tr. 155). He further found that Plaintiff was not mentally retarded, but that her level of adaptive functioning was "markedly impaired." (Tr. 156). Dr. Back diagnosed Plaintiff with:

| | |
|---|---|
| Axis I: | Chronic Pain Disorder Associated with both psychological factors and a general medical condition |
| Axis II: | Obsessive Compulsive Personality Disorder |

(Tr. 155). Dr. Back reported that Plaintiff's condition was not expected to improve within 12 months. (Tr. 155).

On November 2, 2006, x-rays of Plaintiff's right wrist revealed no displacement, fractures, or dislocations. (Tr. 164). X-rays of Plaintiff's lumbar spine showed some increased lordosis that "may be anatomical v. positional and some presence of Schmorl's nodes,[1] especially I L5 and S1." (Tr. 164). The findings were found to be consistent with lumbar degenerative disk disease, but no significant dislocations or abnormalities were noted. (Tr. 164).

On November 6, 2006, a General Physical Examination was performed by Dr. William McGowan. (Tr. 157-163). Dr. McGowan noted that Plaintiff stated she cried a lot, but took no anti-depressant. (Tr. 159). He also noted that Plaintiff demonstrated range of motion within normal limits in the cervical and lumbar spines, normal gait and tandem walking, and was able to walk on her heel and toes. She was also able to squat and arise from a squatting position, although slowly. (Tr. 160-161). Dr. McGowan diagnosed Plaintiff with lumbar back pain, wrist

---

[1]Schmorl's nodules - A nodule seen in radiographs of the spine, due to prolapse of a nucleus pulposus into an adjoining vertebra. Dorland's Illustrated Medical Dictionary 1302 (31st ed. 2007).

-4-

pain, headaches, depression on no Rx, and narcotic use for pain control by history.  (Tr. 163).

He further found that Plaintiff could walk, stand, sit, handle, finger, see, hear and speak, and that

her ability to lift and carry objects may be mild to moderately limited by her diagnosis.  (Tr. 163).

On November 30, 2006, a Physical RFC Assessment was completed by non-examining

consultant, Dr. Bill Payne.  (Tr. 165-172).  Dr. Payne found that Plaintiff could:

> occasionally lift and/or carry (including upward pulling) 50 pounds; frequently lift and/or
> carry (including upward pulling) 25 pounds; stand and/or walk (with normal breaks) for
> a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of
> about 6 hours in an 8-hour workday; push and/or pull (including operation of hand and/or
> foot controls) unlimited, other than as shown for lift and/or carry.

(Tr. 166).  Dr. Payne also found that no postural, manipulative, visual, communicative, or

environmental limitations were established.  (Tr. 167-169).

On January 3, 2007, a Mental Status and Evaluation of Adaptive Functioning was

conducted by Sheldon T. McWilliams, Jr., Ph.D., of the Holden Institute, PA.  (Tr. 175-178).

Dr. McWilliams noted that Plaintiff arrived unaccompanied, and walked with a slight limp.  (Tr.

175).  He also noted that Plaintiff's posture while seated was slightly awkward, with her leaning

toward her right side.  (Tr. 175).  Plaintiff advised that she was supposed to wear glasses for

nearsightedness, but she broke them and did not have the funds to replace them.  (Tr. 175).  Dr.

McWilliams reported that there were no indications that Plaintiff might be experiencing physical

pain.  (Tr. 175).  Plaintiff advised Dr. McWilliams that she was depressed due to her inability

to work.  Plaintiff reported that she had no prescriptions for her physical and emotional

problems, and took over the counter Ibuprofen to decrease her pain level.  (Tr. 175).  She also

advised Dr. McWilliams that she had never received inpatient or outpatient treatment for her

mental/emotional condition.  (Tr. 175).

-5-

Plaintiff admitted to a history of alcohol abuse at age 13, but reported that she no longer drank alcohol.  She also reported that she currently smoked one pack of cigarettes a day.  (Tr. 176).  She told Dr. McWilliams that she has compulsive behavior about organizing her kitchen dishes and her blankets.  (Tr. 1760).  Dr. McWilliams reported that Plaintiff's affect and mood were within normal limits, and that she reported daily thoughts about cutting her wrists, and admitted she made a suicide attempt five years previously.  (Tr. 176).  Dr. McWilliams estimated Plaintiff's IQ to be 80 or greater, and diagnosed Plaintiff with:

| | |
|---|---|
| Axis I: | Major depressive disorder, recurrent, moderate |
| Axis II: | Diagnosis deferred on Axis II |
| Axis III: | Chronic pain |
| Axis IV: | Unemployment, economic problems |
| Axis V: | GAF - 47 (current). |

(Tr. 177).  His prognosis was that Plaintiff's condition was not expected to improve significantly within the next twelve months.  (Tr. 177).

Dr. McWilliams also reported that Plaintiff could communicate effectively, get along with others, take care of herself daily, could drive herself and others, but limited her travel to 30 minutes or less, and demonstrated no physical problems or limitations.  (Tr. 178).  He found that Plaintiff's concentration was slightly below average, her persistence was good, and her pace was within normal limits.  (Tr. 178).  He also found that Plaintiff's adaptive functioning was not consistent with a diagnosis of mental retardation, and that Plaintiff could not manage funds without assistance.  (Tr. 178).

On February 8, 2007, a Psychiatric Review Technique form was completed by non-examining consultant, Jay Rankin.  (Tr. 181-194).  Dr. Rankin found that Plaintiff had a mild degree of limitation in her activities of daily living, and a moderate degree of limitation in

-6-

maintaining social functioning and concentration, persistence or pace, with no episodes of decompensation, each of extended duration. (Tr. 191). He reported that the most recent medical records indicated Plaintiff had moderate depression and that most limitations were physical. (Tr. 193). In addition, he found that the most recent exam indicated Plaintiff was logical, goal directed and able to relate appropriately, that Plaintiff was improved from the first evaluation and seemed capable of unskilled work, and that ongoing marked/severe limitations were not documented. (Tr. 193).

On February 8, 2007, Dr. Rankin also completed a Mental RFC Assessment. (Tr. 195-198). Dr. Rankin found Plaintiff was moderately limited in her ability to: carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision without being distracted by them; complete a normal work-day and work-week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. (Tr. 197). He found Plaintiff was not significantly limited in the remaining categories. He further found that Plaintiff was able to perform work where: interpersonal contact was incidental to work performed, e.g. assembly work; the complexity of tasks was learned and performed by rote, with few variables and little judgment; and where supervision required was simple, direct and concrete. (Tr. 197).

On April 2, 2007, an x-ray of Plaintiff's pelvis revealed normal hip articulation bilaterally, the joint spaces were maintained, there was no evidence of fracture or avascular necrosis, no degenerative osteoarthritis was present, the sacrum and SI joints were normal, and

-7-

the surrounding soft tissues were unremarkable. (Tr. 200). An x-ray of the pelvis was normal,

and an x-ray of the left hip revealed normal left hip articulation, the joint space was maintained,

there was no evidence of fracture or avascular necrosis, and the surrounding soft tissues were

normal. (Tr. 200-201).

On November 8, 2007, Plaintiff presented herself to the Ozark Guidance Center, Inc.,

complaining of depression, degenerative disc disease, chronic pain, and alcohol abuse in the past.

(Tr. 219). The treatment recommendations were short-term solution based counseling and pain

management group. (Tr. 219). On November 15, 2007, Stanley Rest, Ph.D., of the Ozark

Guidance Center, Inc. advised Plaintiff that she met the criteria for the chronic pain group. (Tr.

220). Records from Ozark Guidance Center, Inc. dated February 20, 2008, indicate that Plaintiff

lost contact, and she was diagnosed as follows:

| | |
|---|---|
| Axis 1: | Depressive disorder NOS - primary diagnosis |
| Axis 2: | No diagnosis on Axis II |
| Axis 3: | None known for Axis III |
| Axis 4: | Problems with primary support group |
| Axis 5: | Current GAF - 50 |

(Tr. 222). Her prognosis was guarded.

In an undated Disability Report - Adult, Plaintiff stated that she stopped working in 2001

and 2002, due to low back pain and other pain. (Tr. 92). She reported that she could not walk,

sit or stand without pain, and had difficulty standing after sitting for only a few moments. (Tr.

92). She reported that she could not lift a gallon of milk with one hand, could not walk more

than 5 minutes, could not sit more than 5 minutes, could not stand more than 5 minutes, and

suffered with depression and chronic headaches. (Tr. 92). She reported that she was only taking

over-the-counter medication for pain because "She cannot afford the prescription medications

-8-

she needs."  (Tr. 95).

In a September 15, 2006 Function Report - Adult, Plaintiff reported that she lived in a trailer with her two children, ages 8 and 9, and that on a daily basis, she would get up, tell her children to get up, and after the children got on the school bus, she would spend most of the day in bed or doing light housekeeping. (Tr. 97).  She reported that her two children and her mother did almost everything. (Tr. 97).  She reported that she did not sleep well, could not bend over and tie her shoes, only used the shower, that it was hard to bend and shave her legs, and that using the toilet caused her legs to shake and get numb and tingly.  (Tr. 98).  She further reported that she did not do house or yard work because she was in too much pain.  (Tr. 99-100).  She reported that she hardly ever read because it was too hard to concentrate, but that she talked daily on the phone to her sister and friend.  (Tr. 101).  She stated that she could follow written and spoken instructions, got along fine with authority figures, but did not handle stress well.  (Tr. 103).

In another report of the same date, Plaintiff stated that the pain also went up her neck, and that all lifting hurt.  (Tr. 105).  She reported that muscle relaxers helped at night.  She also reported taking Flexeril and Hydrocodone, which she said did not work very well.  (Tr. 106).  She stated that now she "only uses Ibuprofen for pain."  (Tr. 106).

In an undated Disability Report - Appeal, Plaintiff reported that every day she had suicidal ideation due to her severe pain, and reported a "new" illness - "PTSD - sexually abused as a child along with her sister by her father."  (Tr. 114).  She also reported trying cortizone injections.  (Tr. 16).

In a July 27, 2007 Disability Report - Appeal, Plaintiff reported that the injection in her

AO72A
(Rev. 8/82)

left leg did not help.  (Tr. 126).  She also reported that her mother and children helped with the laundry, cooking, dishes, and cleaning, and that someone else helped to drive her where she needed to go.  (Tr. 126).

**III.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8ᵗʰ Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8ᵗʰ Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8ᵗʰ Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8ᵗʰ Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8ᵗʰ Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by

-10-

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

## IV.   Discussion

### A.   Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints, including evidence presented by third parties, that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a

-11-

whole.  Id.  As the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints.  The ALJ stated that he did not doubt that Plaintiff's pain symptoms that appeared throughout the record were legitimate, and due consideration had been given to her statements.  (Tr. 47).  However, he further found that the objective evidence fell short of demonstrating the existence of pain and limitations that were so severe that Plaintiff could not perform any work on a regular and continuing basis.  (Tr. 47).  He found that although Plaintiff testified to an extremely high level of daily pain, the objective records showed only mild degenerative changes which had been treated conservatively, and that Plaintiff's allegations of pain were not fully credible.  The ALJ discussed Dr. McGowan's general physical exam, wherein Plaintiff demonstrated range of motion within normal limits in the cervical and lumbar spines, normal gait and tandem walking, and Plaintiff was able to walk on her heel and toes.  She was also able to squat and arise from a squatting position, although slowly.  Further, in his Physical RFC Assessment, Dr. Payne found no postural, manipulative, visual, communicative, or environmental limitations were established, and that Plaintiff would be able to perform medium level work.  (Tr. 166).

It is also worth noting that Plaintiff was only taking over-the-counter medications for the pain at various times that she also complained of debilitating pain.  Plaintiff reported that she could not afford the prescription medications she needed.  While economic justifications for lack of treatment can be relevant to a disability determination, Murphy v. Sullivan, 953, 383, 386 (8th

-12-

Cir. 1992), a lack of means to pay for medical services "does not ipso facto preclude the Secretary from considering the failure to seek medical attention in credibility determinations." Webb v. Astrue, 2011 WL 98925, at *5 (W.D. Ark., Jan. 12, 2011), quoting from Cole v. Astrue, 2009 WL 3158209, at *6 (W.D.Ark., Sept. 29, 2009). There is nothing in the record to indicate that Plaintiff sought assistance from free clinics or was refused medication or treatment because of her financial condition, other than the fact that she went to Ozark Guidance Center on November 8, 2007. Even then, on February 20, 2008, Ozark Guidance Center reported that Plaintiff lost contact with them. (Tr. 222). In addition, Plaintiff continued to smoke one pack of cigarettes per day during the relevant time period, and there is no evidence that Plaintiff chose to forego smoking in order to help pay for medications, which is also inconsistent with allegations of disabling pain.

### C. RFC Assessment:

The Court next addresses the ALJ's assessment of Plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d

-13-

642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

In the present case, the ALJ found that Plaintiff had the RFC to perform light work with certain limitations.  Although the Court recognizes that in his evaluation dated September 19, 2006, Dr. Back noted certain "marked" impairments, approximately four months later, Dr. McWilliams, who also examined Plaintiff, found no "marked" impairments, and that Plaintiff could communicate effectively, get along with others, take care of herself daily, drive herself and others, and demonstrated no physical problems or limitations.  Although he found Plaintiff's concentration was slightly below average, he found her persistence was good and her pace was within normal limits.  A month later, in February of 2007, Dr. Rankin, the non-examining consultant, who had before him the reports of both Dr. Back and Dr. McWilliams, found Plaintiff had only mild and moderate limitations, and that Plaintiff was improved from the first evaluation and seemed capable of unskilled work, and "that ongoing marked/severe limitations were not documented."

The ALJ stated that he considered the administrative findings of fact made by the state agency physicians, and that while he was mindful that those opinions were from non-examining and non-treating expert sources, "they are not inconsistent with the medical evidence as a whole, and are therefore accorded substantial weight in determining the claimant's residual functional capacity identified above."  (Tr. 48).  In fact, the findings of Dr. Rankin, the non-examining consultant, were consistent with the findings of Dr. McWilliams, who did examine Plaintiff subsequent to Dr. Back.  Furthermore, Dr. Rankin had the benefit of both of the examining doctors evaluations when making his findings.  The Court therefore believes there is substantial

-14-

evidence to support the ALJ's RFC findings.

     **D.**    **Hypothetical Proposed to Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ proposed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's statements constitute substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments, prior to December 31, 2007, did not preclude her from performing other work as a production worker, sewing machine operator, and cashier. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from VE based on properly phrased hypothetical question constitutes substantial evidence).

**V.**    **Conclusion:**

Based on the foregoing, the Court affirms the ALJ's decision, and dismisses Plaintiff's case with prejudice.

IT IS SO ORDERED this 29th day of June, 2011.

/s/ Erin L. Setser
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)